# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DERRICK TYRONE GRANTLEY,

        Plaintiff,

v.                                  Case No. 3:17-cv-678-J-32PDB

C. E. DANLEY, et al.,

        Defendants.

_____

## ORDER

### I.   Status

Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Civil Rights Complaint (Doc. 1) raising claims of deliberate indifference to his serious medical needs against C.E. Danley, a medical technician; G.A. Espino, a medical doctor; D. Robinson, a licensed practical nurse;[1] and C. Le, a medical doctor. Before the Court are cross-motions for summary judgment. See Defendant Le's Motion (Doc. 65) and Plaintiff's Response (Doc. 82); Defendants Espino and Danley's Motion (Doc. 73), with exhibits (Doc. 78), and Plaintiff's Response (Doc. 85); Plaintiff's Motion and Declaration as to Defendant Espino (Docs. 79, 97) and Defendant Espino's Response (Doc. 89), with attachments

_____

[1] A Clerk's Default (Doc. 38) has been entered as to Defendant Robinson.

(Doc. 91); Plaintiff's Motion as to Defendant Le (Doc. 81) and Defendant Le's Response (Doc. 94).[2] The Motions are ripe for review.

## II.  <u>Plaintiff's Complaint</u>[3]

According to Plaintiff, on January 9, 2017, he was evaluated for complaints of constant stomach pain. The sick-call nurse gave Plaintiff Alcalak tablets and scheduled Plaintiff to see the doctor. On January 13, 2017, Plaintiff was evaluated by Defendant Le for complaints of stomach pain. Defendant Le prescribed Protonix to help with Plaintiff's pain. Approximately one month later, on February 16, 2017, Defendant Le evaluated Plaintiff and continued the Protonix because it was helping him. On March 21, 2017, Plaintiff complained to Nurse Reynolds (who is not a defendant) about pain in his chin which was caused by a piece of metal stuck in Plaintiff's chin. Nurse Reynolds gave Plaintiff some Ibuprofen and scheduled Plaintiff to see the doctor. Plaintiff was evaluated by Doctor Acevedo (who is not a defendant). Doctor Acevedo prescribed 600 milligram Ibuprofen to help relieve the pain in Plaintiff's chin.

---

[2] All citations are to the page numbers assigned the Court's electronic case filing system.

[3] <u>See</u> <u>Stallworth v. Tyson</u>, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

On April 7, 2017, Plaintiff was transported to a county jail for a hearing in his criminal case. While there, Plaintiff continued to receive Protonix and Ibuprofen. On April 9, 2017, Plaintiff attempted suicide by cutting his arms with a razor blade and swallowing the razor blade. He was taken to the emergency room, where he was evaluated by a doctor and sutures were placed in both arms. On April 12, 2017, he returned to the jail, and on April 15, 2017, he removed 3 of the sutures from his right arm. Plaintiff was transported back to the hospital to have the sutures replaced. The doctor at the hospital ordered that the sutures in both of Plaintiff's arms be removed in 10 days.

On April 18, 2017, Plaintiff returned to Florida State Prison. Copies of the doctor's orders were given to Defendant Danley. While Plaintiff was in the medical department with Defendant Danley, Plaintiff asked Danley if he would be seen by a doctor before going to his cell. Danley became argumentative. Plaintiff advised Danley that he was in pain and needed her to make sure the doctor rewrote his medication orders for Protonix and Ibuprofen. Danley continued to yell at Plaintiff, and Plaintiff became angry and yelled back. Danley then told Sergeant Williams (who is not a defendant) that Plaintiff could leave. Danley refused to document Plaintiff's complaints or evaluate him.

When Plaintiff returned to his cell, he cut the sutures out of his right arm, which left a gash in his arm. On April 18, 19, 20, and 24, 2017, Plaintiff filed medical-related grievances relating to Danley's actions and denial of medical

care. On April 24, 2017, Plaintiff was examined by Defendant Le. Plaintiff told Le that his stomach, arm, and chin were hurting and that Plaintiff needed his prescriptions for Protonix and Ibuprofen. Le advised Plaintiff that he was only concerned about the open wound on Plaintiff's right arm. Le ordered 10 days of wound care and antibiotics but refused to write prescriptions for pain medication and Protonix. Plaintiff was returned to his cell where he remained in substantial pain.

On May 1, 2017, Plaintiff filed two grievances complaining of pain in his stomach, chin, and arms. Plaintiff returned to the medical department on May 4, 2017, and was examined by Defendant Espino. Espino refused to remove the sutures from Plaintiff's left arm, and he ignored Plaintiff's complaints of stomach, chin, and arm pain. Espino refused to write prescriptions for Ibuprofen and Protonix. Plaintiff returned to his cell and remained in excruciating pain. That same day, he filed a grievance complaining about Espino's denial of treatment.

On May 6, 2017, Plaintiff completed a sick-call request and provided it to Defendant Robinson. That afternoon, Plaintiff advised Robinson that he was in excruciating pain and that he had a medical emergency. Robinson refused to report Plaintiff's medical emergency to the appropriate staff. Plaintiff continued to experience pain.

Plaintiff submitted additional sick-call requests on May 9, 12, and 13, 2017. On May 7, 2017, he filed another grievance complaining of pain in his arms and stomach. On May 11, 2017, Plaintiff mailed a complaint to the Regional Director's Office complaining about the denial of medical care from Espino, Robinson, and Danley. On May 11, 2017, Defendant Espino responded to several of Plaintiff's grievances. Espino falsified documents by claiming that Plaintiff did not have sutures in his arms because Plaintiff had removed them himself.

On May 15, 2017, Plaintiff was taken to the medical department to be examined for the complaints he made in his sick-call requests. Nurse Turbyfill (who is not a defendant) provided Plaintiff with some Ibuprofen packets and Alcalak for the pain in Plaintiff's arms and stomach. Nurse Turbyfill advised Plaintiff that he would be seen by a doctor.

On May 19, 2017, Defendant Espino examined Plaintiff. Espino was upset with Plaintiff because Plaintiff had filed grievances. Espino advised Plaintiff that he was reordering the Protonix and Ibuprofen for Plaintiff's stomach and arm pains. Until then, Plaintiff had suffered excruciating pain in his stomach and arms for 31 days.

On May 24, 2017, Defendant Espino evaluated Plaintiff again, and reordered wound care for Plaintiff's open wounds on his right arm, but he still refused to remove the sutures from Plaintiff's left arm which was obviously

infected and swollen with puss coming out. When Plaintiff drafted the Complaint in this case, he still had 8 sutures in his left arm due to Espino and Le failing to remove them.

### III.  Summary of Plaintiff's Medical Records, Sick-Call Requests, and Grievances

On April 10, 2017, Plaintiff was admitted to Bayfront Health Punta Gorda with the following diagnoses: "Razor blade in the right colon"; "Suicide ideation"; "Glaucoma"; "Anxiety disorder"; and "Laceration on both antecubital, status post suture and repair on both arms." Doc. 78-1 at 12. He had two lacerations on his right arm that were closed with 12 and 11 sutures, respectively, and one laceration on his left arm that was closed with 12 sutures. Doc. 79-6 at 32-33. He was subsequently discharged, but he was re-admitted on April 15, 2017, with an "[a]brasion of right upper arm—re opened." Doc. 78-1 at 16. Plaintiff is quoted in the record as saying, "'I got mad and took my sutures out.'" Id. (capitalization omitted). The laceration on Plaintiff's right arm was "repair[ed] using sutures" and Plaintiff "tolerated [it] well." Id. at 17; see Doc. 79-6 at 42. He was discharged on April 16, 2017, and the note reads: "[d]ischarge instructions given to police, [i]nstructed on follow up and referral plans." Doc. 78-1 at 18. Plaintiff was given a prescription for Keflex, 500 mg.[4] Id. The

---

[4] Keflex is an antibiotic that "is used to treat infections caused by bacteria, including upper respiratory infections, ear infections, skin infections, urinary tract infections, and bone infections. [It] may also be used for purposes not

hospital records from April 15 to 16, 2017, do not contain any notation regarding Plaintiff's left arm.

On April 18, 2017, upon Plaintiff's return to Florida State Prison, he was assessed by Defendant Danley, who indicated that Plaintiff had "lacerations with stitches" on his right arm, but he "became bel[l]igerent and aggres[s]ive towards staff," and he "would not allow to be further assessed." Id. at 21. Plaintiff was scheduled for a doctors callout. Id.

On April 20, 2017, Plaintiff authored a grievance complaining about Danley's "fail[ure] to ensure that [he] received [his] medication which also includes [his] pain medication." Id. at 27 (grievance #1704-205-267). He further indicated that he was "constantly bleeding from the open wounds in [his] arm that she refused to document and ensure that [he] receive the wound care that was ordered by the hospital." Id. He complained about his stomach hurting because he was "not receiving [his] stomach medication because of [N]urse Danley's negligence." Id.

Five days after returning to FSP, on April 24, 2017, Plaintiff was seen by Defendant Le for a follow up "Suture Removal." Id. at 23. Le noted that Plaintiff had "removed suture by himself," and that Plaintiff had cuts on his right arm.

---

listed." Keflex, Drugs.com, available at https://www.drugs.com/keflex.html (last visited Feb. 28, 2020).

Id. (some capitalization omitted). Le's plan was to resuture the lacerations on Plaintiff's right arm, but Plaintiff refused. Id. at 23-24. Le continued Plaintiff's Keflex and scheduled a follow-up for two weeks. Id. at 23.

On May 1, 2017, Plaintiff submitted a grievance complaining about not receiving his stomach pill and Claritin. Doc. 85-1 at 6 (grievance #1705-205-047). On May 4, 2017, Plaintiff was seen for multiple issues by Defendant Espino. Doc. 78-1 at 25. Espino indicated that Plaintiff was requesting a low residue diet, but Espino could not find any indication for that diet. Id. Espino also made notes about Plaintiff's right arm and ordered that he continue wound care with the nurse. Id.

That same day, May 4, 2017, Plaintiff authored a grievance, alleging that he "was denied medical treatment by the so-called medical doctor." Doc. 85-1 at 2 (grievance #1705-205-118). He alleged that "[t]he doctor [(Espino)] refused to remove the Eight sutures that [he] had in [his] arm for over 26 days."[5] Id. He complained that "[t]he sutures [we]re tight and causing [him] pain, and infection as well as permanent scarring." Id. He further claimed that "[t]he doctor refused to order any treatment such as wound care and antibiotics and pain medication for the 2 open wounds [he had] in [his] right arm." Id. He continued:

---

[5] Only 25 days elapsed from and including April 10, 2017, to and including May 4, 2017.

> Bayfront Health hospital sent back with me
> specific orders that my sutures be removed in 10 days
> and that I receive antibiotics 4 times a day while my
> wounds are open.
>
> Dr. Ce Le continued on these orders but refused
> to provide me with pain medication as I was already
> receiving for pain in my chin, but now that Dr. Le[] is
> gone, this new doctor [(Espino)] is refusing to give me
> any treatment what so ever . . . . I was receiving
> stomach pills for stomach pain I was having and he
> refused to rewrite that. It had only stopped cause I was
> in outside Court for 11 days.

Id.[6]

On May 6, 2017, Plaintiff submitted a sick-call request, complaining that

he has been "denied of the right to have [his] sutures removed from [his] arm."

Doc. 85-4 at 2. He asserted that the sutures had "been in [his] arm for 25 days,

ever since 4-9-17"[7] and that they were "tight" and causing "excruciating pain

and discomfort including leaving permanent disfigurement and infection like

puss in [his] arm." Id. He also requested pain medication for the pain in his

chin, and he reiterated that both arms and his stomach were hurting. Id.

---

[6] On May 17, 2017, Plaintiff's grievance #1705-205-118 was "returned without further processing" because "[a] decision has already been rendered . . . on the issue currently being grieved . . . in formal grievance 1704-205-267 and 1705-205-116." Doc. 85-1 at 3.

[7] The hospital records show that the sutures were placed in Plaintiff's arms on April 10, 2017. See Doc. 79-6 at 32-33. Even so, 28 days passed from and including April 9, 2017, to and including May 6, 2017.

On May 7, 2017, Plaintiff authored another grievance complaining about Defendant Robinson's failure to report his medical emergency or otherwise treat him on May 6, 2017. Doc. 78-1 at 30 (grievance #1705-205-116). He further indicated that his "arms are in pain from the sutures and the open cuts" and his "stomach is hurting as well as [his] chin." <u>Id.</u>

On May 8, 2017, Espino saw Plaintiff again to evaluate his wound while it was being redressed in wound care. <u>Id.</u> at 26. He noted that Plaintiff's "wound has been stagnant and not healed properly." <u>Id.</u> He ordered that Plaintiff cover the wound with Neosporin and "[c]ontinue wound care." <u>Id.</u>

On May 9, 2017, Plaintiff completed a sick-call request, saying that he was "having excruciating pain in [his] arms that are cut open," and requesting pain medication. Doc. 85-4 at 3. On May 12, 2017, he wrote another sick-call request, indicating that he was "having continuous pain in [his] right and left arms." <u>Id.</u> at 4. The next day, May 13, 2017, Plaintiff wrote another sick-call request, reiterating his complaints of "excruciating pain" in his arms and requesting pain medication. Doc. 85-5 at 3.

In the meantime, on May 11, 2017, Plaintiff received the following response to grievance #1704-205-267:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed. Review of your medical file show[s] that you were gained back from outside court on 4/18/17 with

sutures, EMT Danley went to have the physician look at your arm when you stated "I don't do well with attitudes, I'll kill you, you white bitch", at which time your encounter was terminated due to your agitated behavior and threatening staff. The physician reviewed your transfer summary upon being gained back and ordered antibiotics and wound care and noted to schedule for follow up.

You were followed up by the physician on 4/24/17 to have sutures removed to which you had already removed. The physician prescribed additional antibiotics and 10 more days of wound care and a follow up. Review of your medication and treatment record (MARs) show that you were issued your antibiotics and received wound care as prescribed by the physician.

On 5/4/17 you were followed up by the physician your wound was documented as still open, but no puss seen and you stated that Nurse Asbury takes care of your wound care[. T]he physician noted no treatment indicated and follow up PRN.

On 5/8/17 while being seen in the Urgent Care for your wound care you were also seen by the physician at which time . . . the physician noted wound was stagnant, the physician re-ordered wound care time 2 weeks and noted to apply Neosporin after cleaning wound; you were also scheduled for a follow up appointment.

If you are experiencing medical issues and/or concerns you can access sick call to be evaluated and if medically indicated you will be referred for further evaluation.

Doc. 78-1 at 28.

On May 14, 2017, Plaintiff submitted a grievance alleging that he had signed up for sick call on May 6, 8, 9, 12, and 13, 2017, but he had not yet seen a nurse. Doc. 85-1 at 8 (grievance #1705-205-228). He complained about "excruciating pain due to the open cuts and injury to [his] right arm and the sutures in [his] left arm which [were] tight and also causing pain, infection, and discomfort." Id. He requested pain medication. Id.

On May 17, 2017, Espino responded to Plaintiff's grievance #1705-205-047:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> Review of your medical file show[s] that you were gone to Outside Court over 24 hours therefore you[r] prescription(s) are no longer valid.
>
> Further review shows that since being gained back from Outside Court on 4/18/17 you have not access[ed] sick call regarding need for medications.
>
> You were seen by the physician on 4/24/17 to have sutures removed to which you had already removed. You made no mention of needing medications renewed during this encounter, the physician only prescribed additional antibiotics and 10 more days of wound care and a follow up.
>
> On 5/4/17 you were followed up by the physician [for] your wound and complaint of abdominal pain; the physician noted your complaint of abdominal pain and stated no treatment indicated and no indication for renewal of low residue diet, you were educated to follow up PRN.

On 5/8/17 while being seen in the Urgent Care for your wound care you were also seen by the physician at which time you still made no mention of medications needing to be renewed, the physician noted wound was stagnant, the physician re-ordered wound care time 2 weeks and noted to apply Neosporin after cleaning wound; you were also scheduled for a follow up appointment which is scheduled for the near future.

Therefore if you are in need of medication renewal for Claritin you can access sick call to be evaluated and if medically indicated you will be referred for further evaluation.

Doc. 85-1 at 7. On the same date (May 17, 2017), he received a similar response

to grievance #1705-205-116:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

Review of your medical file show[s] that you were gained back from outside court on 4/18/17 with sutures, the physician reviewed your transfer summary upon being gained back and ordered antibiotics and wound care and noted to schedule for follow up.

You were followed up by the physician on 4/24/17 to have sutures removed to which you had already removed. The physician prescribed additional antibiotics and 10 more days of wound care and a follow up.

On 5/4/17 you were followed up by the physician at which time your wound was documented as still open, but no puss seen and you stated that Nurse

Asbury takes care of your wound care, the physician noted no treatment indicated and follow up PRN.

On 5/8/17 while being seen in the Urgent Care for your wound care you were also seen by the physician at which time the physician noted wound was stagnant, the physician re-ordered wound care time 2 weeks and noted to apply Neosporin after cleaning wound; you were also scheduled for a follow up appointment which is scheduled for the near future.

Further review of your medication and treatment record (MAR) shows that you were seen for your wound care as ordered by the physician.

If you are experiencing medical issues and/or concerns prior to your call-out you can access sick call to be evaluated and if medically indicated you will be referred for further evaluation.

Doc. 78-1 at 31.

On May 19, 2017, Espino evaluated Plaintiff for his complaints of abdominal pain and requests for medication renewals. Id. at 32. Espino noted that Plaintiff complained of stomach pain and pain in his left jaw, and Espino cautioned him on the adverse effects of all medications Plaintiff is taking, but notated that Plaintiff "still wants them." Id. Espino indicated there were no abnormal findings, but Plaintiff was insisting on pain medications. Id. Espino found that Plaintiff's abdominal pain etiology was unknown, but he renewed Protonix and Ibuprofen for 2 weeks. Id.

Five days later, on May 24, 2017, Espino evaluated Plaintiff's right arm wound, and indicated that it was "non healing" and Plaintiff "continues to mess up tinkering with the wound to prolong healing." Id. at 34. Espino cauterized the wound, redressed it, and ordered additional wound care. Id. He directed that Plaintiff return in 1 week so he could assess the wound. Id. On May 31, 2017, Espino again cauterized the wound and indicated there were no signs of infection. Id. at 35. He ordered that Plaintiff continue wound care and follow-up in two weeks. Id.

Espino provided Plaintiff the following response on June 2, 2017 to grievance #1705-205-228:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed. Review of your medical file show[s] that you were followed up by the physician on 4/24/17 to have sutures removed to which you had already removed. The physician prescribed additional antibiotics and 10 more days of wound care and a follow up. Review of your medication and treatment record (MARs) show[s] that you were issued your antibiotics and received wound care as prescribed by the physician.
>
> On 5/4/17 you followed up by the physician for your wound and complaint of abdominal pain; the physician documented wound as still open, but no puss seen and you stated that Nurse Asbury takes care of your wound care, the physician noted your complaint of abdominal pain and stated no treatment indicated and no indication for renewal of low residue diet, you were educated to follow up PRN. On 5/8/17 while being seen in the Urgent Care for your wound care you were

also seen by the physician at which time the physician noted wound was stagnant, the physician re-ordered wound care time 2 weeks and noted to apply Neosporin after cleaning wound; you were also scheduled for a follow up appointment which is scheduled for the near future.

You were seen on 5/19/17 by the physician for sick call referral for abdominal pain and med renewal w[h]ere you[r] Protonix and ibuprofen was renewed times 2 weeks; you were seen on 5/24/17 by the physician for follow up to check wound to right AC where you were ordered dressing changes times 2 times a week for 2 weeks and scheduled for a follow up in 1 week. On 5/31/17 you were seen by the physician for follow up wound to right AC at which time the physician noted to continue wound care and schedule for follow up which is scheduled in the near future.

If you are experiencing medical issues and/or concerns prior to your call-out you can access sick call to be evaluated and if medically indicated you will be referred for further evaluation if you feel your medical issues and/or concern require immediate medical attention you can declare a medical emergency at which time you will be evaluated and if medically indicated you will referred for further evaluation and/or referred to a higher level of care.

Doc. 85-1 at 9.

Around June 28, 2017, Plaintiff was transferred from FSP. See Doc. 4. On July 17, 2017, Plaintiff authored a grievance at the Miami-Dade Corrections and Rehabilitation Department, complaining that he had been seen in sick-call on July 2 and 14, 2017, regarding suture removal in his left arm, but the sutures had yet to be removed. Doc. 85-3 at 2. He claimed that "[t]hey are pussing up,

bloody, and abraded," and that the sutures had been in his arm since April 9, 2017. Id. His grievance was stamped-"NON-EMERGENT." Id. His sutures were removed on July 19, 2017, and he was given "education and medications for the care of the area post suture removal." Id. at 3.

## IV. **Summary Judgment Standard**

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted); see Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotations and citation omitted)). In considering a summary judgment motion, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Hornsby-Culpepper, 906 F.3d at 1311 (quotations and citation omitted).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote and citation omitted); <u>see</u> <u>Winborn v. Supreme Beverage Co. Inc.</u>, 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam) ("If the movant satisfies the burden of production showing that there is no genuine issue of fact, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" (quoting <u>Shiver v. Chertoff</u>, 549 F.3d 1342, 1343 (11th Cir. 2008)). "A 'mere scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Loren v. Sasser</u>, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)).

"The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." <u>T-Mobile S. LLC v. City of Jacksonville, Fla.</u>, 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

## V.    <u>Analysis</u>

"To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury." <u>Nam Dang by & through</u>

Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017)

(citation omitted).

> A serious medical need is one that has been diagnosed
> by a physician as mandating treatment or one that is
> so obvious that even a lay person would easily
> recognize the necessity for a doctor's attention. In the
> alternative, a serious medical need is determined by
> whether a delay in treating the need worsens the
> condition. In either case, the medical need must be one
> that, if left unattended, poses a substantial risk of
> serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and

citation omitted).

Deliberate indifference to a serious medical need requires "three

components: (1) subjective knowledge of a risk of serious harm; (2) disregard of

that risk; (3) by conduct that is more than mere negligence." Farrow v. West,

320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); see Dang, 871 F.3d at

1280; Melton v. Abston, 841 F.3d 1207, 1223 & n.2 (11th Cir. 2016). "Subjective

knowledge of the risk requires that the defendant be 'aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference.'" Dang, 871 F.3d at 1280 (quoting Caldwell v.

Warden, FCI Talladega, 784 F.3d 1090, 1099-1100 (11th Cir. 2014)).

> An official disregards a serious risk by more than mere
> negligence "when he [or she] knows that an inmate is
> in serious need of medical care, but he [or she] fails or
> refuses to obtain medical treatment for the inmate."
> Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1425

(11th Cir. 1997), overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. See Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994) (citing Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990)).[8] Further, "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Dang, 871 F.3d at 1280. "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" Id. (quoting Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008)).

---

[8] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). However, "[i]t is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985)); see Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016).

## A. Claims against Defendant Danley

Plaintiff claims that Defendant Danley was deliberately indifferent on April 18, 2017, "by failing to treat Plaintiff for excruciating pain in the arms and stomach; [and] by failing to ensure that Plaintiff's . . . medication, Protonix and ibuprofen, was reordered by medical doctor upon Plaintiff return to the institution." Doc. 1 at 13-14.

Defendant Danley argues that Plaintiff has failed to show she acted with deliberate indifference, and Plaintiff has failed to support his position with any supporting evidence. <u>See generally</u> Doc. 73. She further claims she is entitled to qualified immunity, and Plaintiff did not suffer any physical injury. <u>Id.</u> at 23-24. In support of her position, Danley offers the Declaration of Dr. John P. Lay, Jr., a medical doctor employed by Centurion of Florida, LLC (Doc. 78-1). Danley also submitted a Declaration (Doc. 73-3), averring, in part, as follows:

> I do not have the power or authority to prescribe medications. I do not have the power o[r] authority to provide medi[c]ations to patients who do not have a valid prescription.
>
> . . . .
>
> I addressed every one of Plaintiff's medical conditions and complaints which were known to me, and treated each of these conditions adequately.
>
> . . . .
>
> A review of the medical records in this case reveals that I was not made aware of any sutures to

21

Plaintiff's left arm after his suicide attempt in April of 2017. I know this because had I been made aware of any sutures in Plaintiff's left arm, I would have documented it in Plaintiff's medical chart, and I would have taken actions to treat the sutures, if a medical provider had determined that treatment was necessary.

As the records show, on April 18, 2017, Plaintiff returned to Florida State Prison with certain injuries resulting from a suicide attempt.

That same day, I examined Plaintiff and described his injuries as "lacerations with sti[t]ches" to the right arm. I did not make any notations that there were sutures to Plaintiff's left arm because I did not observe or was otherwise made aware of any sutures to Plaintiff's left arm. Had I been made aware or otherwise observed any sutures in Plaintiff's left arm, I would have documented same, pursuant to applicable procedures.

The records further show that during this same encounter, Plaintiff "became belligerent and aggressive towards staff," stated "I don't do well with attitudes, I'll kill you, you white bitch," and refused to be assessed any further. At this point, the records show the encounter was terminated due to Plaintiff's aggressive behavior, and that a "doctors call out [was] scheduled for April 24, 2017.

I never withheld any type of treatment to the Plaintiff which I deemed necessary based on my professional judgment, training, knowledge and experience, or which was prescribed by a medical provider. I did not receive any instructions or records from Bayfront Health Hospital ordering that Plaintiff's sutures be removed within 10 days from April 15, 2017, or within 10 days of any date.

> I never saw any sutures to Plaintiff's left arm.
> Additionally, Plaintiff never told me or otherwise
> made me aware of any sutures to his left arm. I do not
> recall reviewing or addressing any of Plaintiff's
> grievances or Sick-Call Requests, and the records do
> not show that I did.

Doc. 73-3 at 1, 2-3 (paragraph enumeration omitted and emphasis added). In the contemporaneously-created medical records dated April 18, 2017, Danley indicated that Plaintiff had "lacerations with stitches" on his right arm, but he "became bel[l]igerent and aggres[s]ive towards staff," and he "would not allow to be further assessed," and she scheduled Plaintiff for a doctors call out for April 24, 2017. Doc. 78-1 at 21. Plaintiff does not allege that Danley had any additional contact with him relating to his claims.

Plaintiff acknowledges in his Complaint that he became angry with Danley and yelled back at her, although he alleges that she initiated the argument. He argues, however, that if he had threatened her as she alleges, he would have received a disciplinary report, but he did not. Doc. 85 at 14. He also argues that "Danley has not presented any documentation to show that she referred Plaintiff to be evaluated by a psychiatrist prior to allow security to take Plaintiff to a cell. Once Plaintiff was placed in the cell, Plaintiff ended up having a mental health breakdown and cut himself . . . . Danley is liable because she refused to fully screen Plaintiff." Id. at 14-15 (formatting modified).

Regardless of the content of the verbal disagreement, Danley's interaction with Plaintiff was terminated. Danley avers that she did not see sutures in Plaintiff's left arm and thus did not document them. Assuming Plaintiff had sutures in his left arm, Danley's failure to document them may—at worst—be considered negligent. But "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Additionally, as to Plaintiff's claims that Danley failed to ensure his medications were renewed, Danley, an emergency medical technician, does not have the authority to renew medications. See Doc. 73-3 at 1 (Danley's Declaration: "I do not have the power or authority to prescribe medications. I do not have the power o[r] authority to provide medi[c]ations to patients who do not have a valid prescription."); Doc. 78-1 at 8 (Dr. Lay's Declaration: "Danley does not have power or authority to give Plaintiff any medications without a valid prescription."). She referred Plaintiff to the doctor to determine what medications and treatment Plaintiff needed. To the extent Plaintiff is attempting to hold Danley liable for him cutting himself because she did not ensure he saw a psychiatrist prior to being placed in a cell, not only did Plaintiff not raise such a claim in his Complaint, but the causal connection between any

failure attributable to Danley in that regard and Plaintiff's resulting self-injuries is too attenuated and not supported by the record.

Considering the entirety of the record and the parties' positions, the Court finds that there is no evidence to suggest either that Danley had subjective knowledge of a risk of serious harm or that she disregarded that risk by conduct that was more than mere negligence. Danley is entitled to entry of summary judgment in her favor.

## B. Claims Against Defendant Le

Plaintiff claims that Defendant Le was deliberately indifferent to his serious medical needs when Le failed to remove the sutures from Plaintiff's left arm and failed to reorder Protonix and Ibuprofen on April 24, 2017. Doc. 1 at 15. Le argues that Plaintiff has not set forth any evidence to show he acted with deliberate indifference to Plaintiff's serious medical needs; Plaintiff fails to allege facts consistent with deliberate indifference; and Plaintiff has failed to allege an affirmative causal connection between Le's actions and Plaintiff's resulting injury. See generally Doc. 65. Attached to the Motion is Le's Affidavit, in which he avers that his "last day practicing at Florida State Prison was April 28, 2017," four days after Plaintiff claims he was deliberately indifferent. Doc. 65-1 at 1. Plaintiff responds by arguing that Le's refusal to remove the sutures on Plaintiff's left arm and failure to treat his stomach, chin, and arm pain on April 24, 2017, amounted to deliberate indifference. See generally Doc. 82.

In Plaintiff's Motion, he argues that judgment should be entered in his favor because Le failed to treat him which resulted in pain, suffering, and physical injury. <u>See generally</u> Doc. 81. Specifically, Plaintiff claims that his appointment with Le on April 24, 2017, was for Le to remove the sutures from Plaintiff's left arm. <u>Id.</u> at 3. "However, after Le s[aw] that Plaintiff had taken the sutures out of his right arm, he became angry and refused to remove the sutures from the Plaintiff's left arm. Le told Plaintiff to take them out himself just as he had did to his right arm. Le wouldn't even rewrite the orders for Plaintiff to receive his Protonix and Ibuprofen." <u>Id.</u> at 4 (formatting modified). Plaintiff alleges that the sutures in his left arm remained there for 110 days, which caused him to suffer pain, infection, and permanent scarring and disfigurement. <u>See</u> <u>id.</u> at 11-15.

Viewing the evidence in the light most favorable to Plaintiff, the Court assumes that Plaintiff had sutures in his left arm on April 24, 2017, when he saw Le, and that those sutures were in place since April 10, 2017. The medical records show that on April 24, 2017, Le saw Plaintiff for a follow-up "Suture Removal." Doc. 81-7 at 2.[9] Plaintiff argues that the "L" with a circle around it on the upper right corner of the treatment note means "left arm." Doc. 81 at 12. Le noted that Plaintiff had "Removed Suture by himself." Doc. 81-7 at 2. Le's

_____

[9] Duplicate at Doc. 78-1 at 23.

treatment plan was to resuture Plaintiff's <u>right</u> arm, but Plaintiff refused. <u>Id.</u>; <u>see</u> Doc. 78-1 at 24. Le scheduled a follow-up in two weeks and continued Plaintiff's Keflex medication. <u>See id.</u> Four days later, Le was no longer working at Florida State Prison.

The question as to Le is whether he was deliberately indifferent to Plaintiff's serious medical needs on April 24, 2017. As a matter of law, the Court finds he was not. The medical records show that Plaintiff saw Le on April 24, 2017, to have his sutures removed, but Plaintiff had already removed the sutures from his right arm. Given that Plaintiff had removed sutures from his right arm which resulted in open wounds, Le reasonably was concerned about and attempted to treat the opens wounds on Plaintiff's right arm.

There is no mention of Plaintiff's left arm in Le's notes. At that time, the sutures had been in Plaintiff's left arm for 14 days. Plaintiff's Complaint alleges that the doctor who re-sutured Plaintiff's right arm on April 15, 2017, "told Plaintiff and wrote in an order that was sent back to the jail, that the sutures in both of Plaintiff['s] arms w[ere] to be removed in 10 days." Doc. 1 at 8.[10] There is no mention in the medical record of Plaintiff requesting Ibuprofen or

---

[10] In September 2019, Plaintiff sought leave to amend his Complaint to clarify that the 10-day period for suture removal on his left arm began to run on April 9, 2017. <u>See</u> Doc. 67 at 2. The Court denied Plaintiff's request for leave to amend. <u>See</u> Order (Doc. 88).

Protonix, as the appointment was scheduled for suture removal. See Doc. 81-7 at 2; see Doc. 81 at 3 (Plaintiff's Response: "Plaintiff was schedule[d] for a follow up doctor's appointment to have the (8) eight sutures in his left arm removed . . . . This appointment was schedule[d] for April 24, 2017.").[11]

Even assuming Plaintiff had a serious medical need with respect to his sutures in his left arm and his need for medications, there is no evidence to support a finding that Le acted with deliberate indifference in not removing Plaintiff's sutures from his left arm and not prescribing Ibuprofen and Protonix. Le saw Plaintiff for a scheduled suture removal, and Le assessed Plaintiff's right arm and recommended that Plaintiff's right arm should be resutured, but Plaintiff refused. See Doc. 78-1 at 24. Le scheduled a follow-up appointment for two weeks. See Doc. 81-7 at 2. Le did not see Plaintiff again, because he was no longer employed at Florida State Prison.

Plaintiff's allegations that Le told Plaintiff to remove the sutures himself, if true, would be unprofessional and perhaps negligent. But failing to remove sutures after 14 days and not providing requested medication, when treatment was otherwise offered at least to the right arm, medication (Keflex) was given (although it was not the medication Plaintiff desired), and a follow-up

---

[11] See also Doc. 85 at 5 (Plaintiff's Response to Espino's Motion: "There's no dispute that the sole purpose of the April 24, 2017 doctors appointment with Defendant Le was to remove the sutures from Plaintiff's LEFT ARM.").

appointment was scheduled, does not amount to an Eighth Amendment violation on this record. There is no evidence to support a finding of deliberate indifference on the part of Le. Thus, Le is entitled to entry of summary judgment in his favor.

### C. Claims against Defendant Espino

Plaintiff claims that Defendant Espino was deliberately indifferent "by failing to treat Plaintiff for pain in the right and left arms; by failing to remove sutures from Plaintiff's left arm which caused pain, infections and puss in [P]laintiff's left arm; by failing to timely reorder Protonix for Plaintiff's stomach pains; [and] by failing to timely reorder Ibuprofen for Plaintiff's complaint of pain in arms, stomach and chin." Doc. 1 at 14.

Espino argues that "there is no record evidence that [he] was deliberately indifferent," and instead, "the record evidence unequivocally shows that, despite Plaintiff's belligerent and threatening behavior, Dr. Espino made sure to examine and treat him every few days for all of the conditions Dr. Espino was aware." Doc. 73 at 19. Espino further submits that Plaintiff has failed to show any delay caused him injury, he is entitled to qualified immunity, and Plaintiff suffered no physical injuries. See id. at 23-24. Plaintiff responds by "contend[ing] that there is more than enough evidence [to] show[] that Espino did in fact refuse to remove the eight sutures from Plaintiff[']s left arm and in the process falsified several different grievances responses claiming that

Plaintiff had removed all of the sutures himself." Doc. 85 at 3; <u>see</u> <u>id.</u> at 6 (arguing that Espino "failed to investigate and instead falsified documents claiming that Plaintiff had removed the sutures from his left arm himself"). He also argues that Espino is responsible for delaying and denying Plaintiff's medications—Protonix and Ibuprofen. <u>See</u> <u>id.</u> at 9.

In Plaintiff's cross-motion against Espino, Plaintiff argues that on each date Espino examined him, Espino refused to remove the sutures from Plaintiff's left arm. Doc. 79 at 12. Plaintiff asserts that Espino knew Le was supposed to remove the sutures on April 24, 2017, and he knew the sutures remained in Plaintiff's arm through Plaintiff's grievances. <u>See</u> <u>id.</u> at 12-15; <u>see also</u> Doc. 97 at 1 (Plaintiff's Declaration: "On several different occasions, Plaintiff was evaluated by Defendant Espino and Plaintiff advised and showed Espino that he . . . had eight sutures in [his] left arm, but still Espino would not remove them out of anger.").[12] He further asserts that "Espino had knowledge that leaving sutures in Plaintiff's arm for longer than necessary would cause infection, scarring and permanent disfigurement." Doc. 79 at 15. Plaintiff also asserts that Espino knew Plaintiff needed Protonix for his stomach and Ibuprofen for his pain, but "for no good reason at all, [Espino] failed to rewrite

---

[12] Defendants Danley and Espino seek to strike Plaintiff's Declaration as untimely (Doc. 100). Given the Court's finding in favor of Espino, there is no prejudice in accepting Plaintiff's Declaration as filed.

Plaintiff's orders for Protonix and Ibuprofen, and then 15 days later, on 5/19/2017, after Plaintiff filed several grievances, Espino finally renewed Plaintiff's" medications. Id. at 17.

In Response, Espino argues that Plaintiff's allegations are unsupported by any evidence and that the evidence "shows that Dr. Espino provided the best treatment possible to the Plaintiff under the circumstances, and that any mistakes, oversights or negligence do not constitute deliberate indifference." Doc. 89 at 1-2. In support of his Motion and Response to Plaintiff's motion, Espino submitted a Declaration, averring in part:

> As the medical records show, I provided continuous and substantial treatment regarding the medical conditions I was aware of, namely, lacerations/sutures to Plaintiff's right arm, complaints of stomach and other pain. During the relevant times, the priority was to treat the lacerations to Plaintiff's right arm, which Plaintiff had removed himself. This became urgent in light of Plaintiff's refusal to allow re-suturing of the lacerations, and due to Plaintiff's actions in "tinkering" with his injuries to prolong the healing process.

> Every few days during the times relevant to this lawsuit, I held regular consultations with the Plaintiff for these conditions which were known to me, and during each one of these consultations, I continuously provided adequate treatment based on my professional judgment, training, knowledge and experience. I did my best to address Plaintiff's numerous complaints when responding to Plaintiff's grievances. I did not see or respond to any of Plaintiffs Sick-Call Requests. Review and responses to Sick-Call

Requests are generally within the scope of duties of nurses.

I never withheld any type of treatment to the Plaintiff which I deemed necessary based on my professional judgment, training, knowledge and experience. I did not receive any instructions or records from Bayfront Health Hospital ordering that Plaintiffs sutures be removed within 10 days from April 15, 2017, or within 10 days from any date.

I never told the Plaintiff to remove the sutures to Plaintiff's left arm himself. This allegation is unfounded and preposterous. I have no motive or desire to deliberately withhold any treatment to an inmate, including the Plaintiff. This would go against my oath as a physician and also against my morals. Along the same lines, I never falsified medical records or any documents, and I never claimed or alleged in any way that Plaintiff did not have sutures in his left arms because Plaintiff had removed them himself.

I never saw any sutures to Plaintiff's left arm. Additionally, Plaintiff never personally told me of any sutures to his left arm.

I reviewed a videotape of a deposition which Plaintiff gave in an unrelated civil rights lawsuit. The videotaped deposition was recorded on July 3, 2017, which is a date Plaintiff alleges he had sutures to his left arm.

Plaintiff alleges in the present lawsuit that the failure to remove sutures caused him pain, infection and puss to his left arm. However, the videotape of Plaintiff's deposition taken on July 3, 2017, shows a different reality. . . .

As shown by the videotape of Plaintiff's July 3, 2017, deposition, sutures to Plaintiff's left arm are not readily visible.

Additionally, the videotape of Plaintiff's July 3, 2017, deposition shows that Plaintiff was making gestures with both of his arms/hands in no apparent pain, and demonstrating no infections, inflammation, swelling, pain or puss to his left arm.

The depiction of the Plaintiff as shown in the videotape attached hereto as Exhibit 1 comports with my recollection of the Plaintiff and the physical condition of his left arm during the times relevant to this lawsuit.

As the videotape of Plaintiff's July 3, 2017, deposition shows, any sutures Plaintiff had to his left arm were not readily apparent or observable. Additionally, any sutures which Plaintiff claims were present as of the date Plaintiff gave the videotaped deposition appear to be hidden.

This would explain the reason I never saw or noticed any sutures to Plaintiff's left arm. Had I seen any sutures to Plaintiff's left arm, I would have recorded it in Plaintiff's medical chart, and I would have taken steps to treat the sutures, if necessary.

Doc. 73-2 at 3-4 (emphasis added).[13]

The parties have presented competing positions. Plaintiff says he repeatedly told Espino about the sutures in his left arm, but Espino says he did not know Plaintiff had sutures in his left arm. The medical records show that Plaintiff had sutures placed in his left arm on April 10, 2017, and he had sutures removed from his left arm on July 19, 2017, but the records from Plaintiff's

---

[13] Duplicate at Doc. 91-2.

treatment with Espino (and Le) do not notate any sutures in Plaintiff's left arm. Plaintiff claims that as a result of Espino's refusal to remove the sutures, he suffered an infection, unnecessary pain and suffering, and permanent scarring and disfigurement.

There is no dispute that Espino did not remove sutures from Plaintiff's left arm. But given the amount of medical care and treatment provided, not only by Espino but by the wound care nurse (who is not a defendant) and others, no reasonable jury would find that Plaintiff had a serious medical need with respect to his left arm that was left unattended by Espino due to his deliberate indifference.

Insofar as Plaintiff claims Espino delayed his medical care, Plaintiff has failed to present any "verifying medical evidence" showing that he suffered an infection or that his "permanent scarring" was a result of the alleged delay rather than simply having sutures. See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). Indeed, the medical record from Plaintiff's suture removal does not indicate that Plaintiff's left arm was infected, that he needed immediate treatment, or that he had complications due to the length of time the sutures

were in his arm. Plaintiff's July 17, 2017 grievance indicates that he had been seen in sick call on July 2 and 14, 2017, in response to his requests to have the sutures removed from his left arm, but the sutures had still not been removed. See Doc. 85-3 at 2. His grievance was stamped-"NON-EMERGENT." Id. His sutures were removed on July 19, 2017, and he was "given education and medications for the care of the area post suture removal." Id. at 3. There is no indication that Plaintiff's left arm was infected or the suture removal was otherwise complicated given the length of time the sutures remained in Plaintiff's arm.

Additionally, the video deposition that was taken in an unrelated case on July 3, 2017, a date on which Plaintiff claims the sutures in his left arm were infected and causing him pain, shows Plaintiff moving his arms with no apparent difficulty or pain. Plaintiff has failed to set forth verified medical evidence showing that the alleged delay caused him to have an infection or permanent scarring.

As to his complaints about suffering pain from not being prescribed Ibuprofen and Protonix from April 18, 2017, to May 19, 2017, such delay in this case does not rise to the level of deliberate indifference. Espino first examined Plaintiff on May 4, 2017. Plaintiff acknowledges that on May 15, 2017, he received "a few packs of ibuprofen and Alcal[a]k for [his] pain in arms and stomach," and on May 19, 2017, Espino reordered Protonix and Ibuprofen. Doc.

1 at 12-13. Plaintiff does not dispute that he was examined by Espino several times during the relevant timeframe. He is simply dissatisfied with Espino's alleged refusal to remove his sutures and provide the medication Plaintiff desired. As to the medication, that Espino's course of treatment changed between his May 4, 2017 evaluation of Plaintiff and his evaluation on May 19, 2017, does not prove, as Plaintiff suggests, that he was deliberately indifferent. Exercising medical judgment is not deliberate indifference. Neither does Plaintiff's disagreement with the treatment he was provided. See Melton v. Abston, 841 F.3d 1207, 1224 (11th Cir. 2016) ("'[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).

In sum, viewing the evidence in the light most favorable to Plaintiff shows that Espino—at most—may have been negligent, but not deliberately indifferent under the Eighth Amendment. On this record, no reasonable jury could find that Espino's actions or inactions rose to the level of violating the Eighth Amendment. Espino is entitled to entry of judgment in his favor.

Accordingly, it is

**ORDERED:**

1.    Defendant Le's Motion (Doc. 65) is **GRANTED**.

2.    Plaintiff's Motion as to Defendant Le (Doc. 81) is **DENIED**.

3.     Defendants Espino and Danley's Motion (Doc. 73) is **GRANTED**.

4.     Plaintiff's Motion as to Defendant Espino (Doc. 79) is **DENIED**.

5.     Plaintiff's Motion for Court to Schedule a Settlement Conference (Doc. 98) is **DENIED**.

6.     Defendants Danley and Espino's Motion to Strike (Doc. 100) is **DENIED**.

7.     Judgment in favor of Defendants Danley, Le, and Espino will be withheld pending adjudication of the remaining claim against Defendant Robinson.

8.     By **April 24, 2020**, Plaintiff shall either file a motion for default judgment against Defendant Robinson or otherwise notify the Court that he is no longer pursuing any claims against Defendant Robinson. If Plaintiff does not meet this deadline, the Court will dismiss the case against Defendant Robinson without further notice.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of March, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 3/9
c:
Derrick Tyrone Grantley, #198328
Counsel of Record